# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>BRADLEY DEAN MOHRING,<br><br>    Defendant. | No. 19-CR-2002-CJW<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |

_____

## TABLE OF CONTENTS

**Page**

**I.**    *INTRODUCTION*……………………………………………………………… 2

**II.**   *FINDINGS OF FACT*………………………………………………………… 2

**III.** *ANALYSIS* ……………………………………………………………………..7

      **A.**    *The Parties' arguments.* ……………………………………………… 7

      **B.**    *The warrant was supported by probable cause.* …………………… 8

      **C.**    *Even if the warrant was not supported by probable cause, the Leon "good faith" exception applies.* ……………………………………… 13

**IV.** *CONCLUSION* ……………………………………………………………… 18

## I. INTRODUCTION

The matter now before me is Defendant's Motion to Suppress Evidence. (Doc. 12.) On October 10, 2018, the Grand Jury charged Defendant with Possession of a Firearm by a Felon in violation of 18 U.S.C. Section 922(g)(1). (Doc. 2.) The charge arose from a search of his residence pursuant to a warrant issued by the Honorable William Patrick Wegman, District Associate Judge of the Iowa District Court.

The Honorable Charles J. Williams, United States District Court Judge, referred this motion to me for a Report and Recommendation. On March 7, 2019, I held an evidentiary hearing on Defendant's motion. The Government called Chickasaw County Sheriff's Department patrol officer and canine handler Stephen Johnson ("Deputy Johnson"). Defendant called no witnesses.

For the following reasons, I respectfully recommend that the Court **deny Defendant's Motion to Suppress.**

## II. FINDINGS OF FACT

This case involves a suspicious boxer—a dog not a prizefighter. The boxer appeared on a surveillance video near the time of a burglary of computer equipment from a business in Nashua, Iowa. The ensuing investigation led to three warrants, three searches, an indictment, and the instant motion to suppress.

Deputy Johnson has been employed as a Chickasaw County Sheriff's Deputy since October 2018. Prior to that, he had been employed as a police officer with the Nashua, Iowa Police Department for four years. He has a two-year degree in criminal justice and is a graduate of the Iowa Law Enforcement Academy. Deputy Johnson is the primary law enforcement officer involved in this matter, having conducted the investigation, as well as applying for, and executing, the search warrants in question. In addition to his employment as a canine handler, Deputy Johnson testified he "grew up with dogs most of [his] life" and is familiar with the breed of dog known as a boxer.

2

Deputy Johnson's testimony generally confirmed the facts contained in his affidavit in support of the search warrants referenced below. On the morning of October 9, 2018, he was called to Five Star Co-op (the "co-op"). The address of the co-op is not listed in the application or the affidavit[1]. However, Defendant's Exhibits F and G make it clear that the co-op is on the edge of town near a boat ramp to a river and some green area. Defendant's residence at 205 Main Street, Apartment 1 is only a few blocks west of the co-op. Defendant runs a home business as an "electronic repair and salesman" and has a sign in his window that advertises his services. (Gov. Ex. 1 at 5 ¶ 3.)

The manager of the co-op reported two identical computer towers were removed after close of business on the previous day. The suspect may have entered through an open window on the co-op's southeast side. The co-op manager called the investigators' attention to video camera footage of a dog, "specifically a 'boxer'"[2] on the east side of the co-op. The co-op had surveillance cameras pointed at its entrances, but these cameras captured nothing of significance. The co-op also had an overhead camera positioned to look down into grain trucks as they passed over or parked on the co-op's scale on the east side of this building. The co-op apparently used this overhead camera angle to capture surveillance footage, including the rather unusual surveillance footage at issue in this case. The manager had reviewed the video from the time the co-op closed until six o'clock the following morning. There was no physical evidence of a break-in such as broken glass or a damaged door. A window was found open where Deputy Johnson assumed the suspect had entered. Investigators also found a footprint showing where someone could have climbed into the window. A door that was normally locked was

---

[1] The co-op's address was not listed in any of the applications or affidavits submitted. It is possible that in Nashua (population 1,600) a facility like a co-op is known in the community without an address.

[2] The affidavit is slightly ambiguous about whether the co-op manager recognized the dog as a boxer. Deputy Johnson testified the co-op manager did, in fact, identify the dog as a boxer.

3

found open.

At 2:43[3] a.m. on October 9, the video shows a dog walking onto the scale. The dog appears to be on a leash. As the dog walks in an arc to the north, an unidentifiable person's hand and arm appears and leads the dog out of the picture. Deputy Johnson testified that the dog on the video was a boxer and that he "positively ID'd the canine" as Defendant's dog from the video. For purposes of the warrant application (Gov. Ex. 1), Deputy Johnson captured and printed still images from the video. (*Id.* at 12-15.) The still images appear black and white. Deputy Johnson could not recall if the original video was in color. The video itself was entered into evidence as Government's Exhibit 4; however, no video was provided to or played for Judge Wegman as part of the warrant application. In addition to still images from the video, Deputy Johnson also submitted still images derived from his body camera video footage of a months' earlier encounter with the dog when he was executing a warrant at Defendant's residence. Deputy Johnson testified the images in Government's Exhibit 1 were similar in quality to those provided to Judge Wegman.

As part of the investigation, Chickasaw County Sheriff Martin Hemann spoke to Rodney Macomber. Macomber reported that "he had seen an individual walking a dog on several occasions near the area." (Gov. Ex. 1 at 5.) Deputy Johnson's affidavit shows he also spoke with Macomber. Macomber confirmed he had seen Defendant walking his dog regularly in the area and "described the dog in question, specifically, the markings" set forth in the affidavit. (*Id.* at 6 ¶ 10.)

I have reviewed the video and conclude that even though the scene is poorly illuminated, it depicts a dog that is recognizable to me as a boxer. More importantly, I find Deputy Johnson's identification of the dog as a boxer is credible, even if I could not

---

[3] The timer on the video shows 0143, but it is one hour behind. (Gov. Ex. 1 at 5 ¶ 2.)

personally make out the breed of the dog. Deputy Johnson is a resident of Nashua, a town of about 1,600 people, where he had been a patrol officer for four years at the time that he applied for the search warrant at issue in this case. Deputy Johnson had become familiar with residents of this small community, including people who walked their dogs. He was personally familiar with Defendant and his boxer because of two prior search warrants he had executed at Defendant's residence. The affidavit supporting the warrant states, among other things that Deputy Johnson "vividly recal[led] the dog being present." (*Id.* at ¶ 7.) The warrant also states that Defendant called the dog by name and spoke to it as if he were the dog's owner and that Deputy Johnson had regularly seen Defendant walking or driving around town with the boxer. (*Id.* at 5 ¶3, 6 ¶ 8.)

Defendant's counsel called into question Deputy Johnson's identification of the dog, including his ability to identify the color and breed of the dog from the video. Deputy Johnson admitted there could be other dogs in Nashua with similar coloring. He conceded that Defendant could not be identified from the brief view of a hand and arm that appears on the video. He also admitted that other people walk their dogs in the area near the boat ramp and the co-op. There was slight confusion regarding the term "brindle" in reference to the boxer. Deputy Johnson was asked by defense counsel whether Defendant's dog is a "brindle." He testified he did not know about a "specific subspecies." (Johnson March 7, 2019 Hr'g Test.)

Deputy Johnson also testified regarding Dale Brewer. In his warrant affidavit, Deputy Johnson described observing Mr. Brewer walking the same dog on the night before the alleged burglary near Defendant's residence. (Gov. Ex. 1 at 6 ¶ 11.) Deputy Johnson learned that Mr. Brewer had been recently released from custody. Because of a court order preventing him from returning to his usual residence, Mr. Brewer was living with Defendant at 205 Main Street, Apartment 1, Nashua, Iowa (i.e., Defendant's residence). (*Id.* ¶ 12.) Deputy Johnson confirmed Mr. Brewer was residing with

Defendant by examining Mr. Brewer's state court criminal file. (*Id.*) At the hearing, Deputy Johnson reviewed the Iowa Courts Online printout regarding Mr. Brewer's case. The printout showed that the no contact order that prevented Mr. Brewer from returning to his own residence had been lifted on September 14, 2018. However, at the time of the warrant application, the unsecured appearance bond still listed Defendant's residence as Mr. Brewer's address and required Mr. Brewer to notify the court of any change of address. No such notification appeared in the court file.

Deputy Johnson obtained and executed the three search warrants. Not including these warrants, he has prepared between 15 and 20 search warrants in Chickasaw County. He does not always present the warrants through a county attorney. In this case, Deputy Johnson spoke with the county attorney by telephone to discuss the facts but did not have her review the warrants. The application was reviewed by Nashua reserve police officer Daniel Moore before it was presented to a judge. Deputy Johnson testified regarding the judges available to sign warrants in Chickasaw County and described how, by chance, Judge Wegman answered the call when the first warrant was presented. Judge Wegman, the former Chickasaw County Attorney, was described as thorough and critical. In a prior case, he requested Deputy Johnson add some facts to the application before he would sign and issue the warrant.

The initial application for a search warrant, supporting affidavit (with attachments), judge's endorsement under Iowa Code Section 808.3, and the warrant itself were admitted into evidence as Government's Exhibit 1. The application sought a warrant to search Defendant's residence for, among other things, computer hardware. Judge Wegman issued the search warrant that Deputy Johnson then executed.

During the execution of the first warrant, Deputy Johnson discovered narcotics and a firearm with ammunition. He also located one of the two computer towers that had

6

been reported stolen by the co-op manager and multiple computer parts that may have come from the second tower.

The two following warrants (Gov. Exs. 3 and 4) were presented to and issued by Magistrate Christine B. Skilton. Deputy Johnson testified that Judge Wegman was unavailable for "whatever reason." Deputy Johnson obtained the second warrant to enable him to search for firearms, ammunition and drug-related items that had been observed during the first search. The third warrant authorized law enforcement officers to obtain a blood specimen from Defendant.

### III. ANALYSIS

*A.     The parties' arguments.*

Defendant argues that Deputy Johnson's affidavit lacks probable cause. In essence, he asserts that the following facts known to Deputy Johnson are insufficient to establish a "fair probability" that evidence of the burglary of the co-op would be found in his apartment: 1) Defendant repairs computers; 2) Defendant walks his dog near the co-op; 3) a dog that looks like Defendant's was walked near the co-op near the time of the burglary. (Doc. 12-1 at 4.) Defendant further argues that the *Leon* good faith exception does not apply such that the seized evidence is admissible. *See United States v. Leon*, 468 U.S. 897, 922 (1984). Specifically, Defendant asserts,

> There is nothing in the affidavit which ties Mr. Mohring or his apartment to the Co-op burglary other than the fact that he is known to walk his dog in the area of the business, and the fact that a dog which resembles his dog is seen on camera footage from the Co-op. Therefore, the affidavit is "so facially lacking in probable cause as to preclude the executing officers' good faith reliance" on the warrant.

(Doc. 12-1 at 6) (quoting *United States v. McNeil*, 184 F.3d 770, 775 (8th Cir. 1999)). Defendant also contends that evidence obtained upon execution of the second and third warrants should be excluded as fruits of the poisonous tree.

7

The Government counters that probable cause existed and that Defendant has oversimplified the facts supporting probable cause. The Government's brief emphasizes the following facts in addition to those cited by Defendant:

1. The dog was observed by a third party in the area of the co-op;

2. Defendant was observed walking the dog by Deputy Johnson;

3. Dale Brewer had been seen walking the dog the day prior to the burglary near Defendant's residence;

4. Both Brewer and Defendant were believed to be living at the same residence;

5. "The dog was positively identified by the officer based on his numerous contacts including search warrants at defendant's residence, where the dog was documented;" (Doc. 15-1 at 5) and

6. "[T]he officer positively identified defendant's dog, not only being at the Co-op in the early morning hours, near the time when the burglary occurred, but also being with the only person that was near the building and had the opportunity to at [sic] the residence." (*Id.*)

Ultimately, the Government asserts:

Common sense suggests that when officers are able to positively identify a dog at the scene of the crime with a human, the human had the opportunity to commit the crime, and that dog is known to reside at one residence, there is a fair probability that evidence of the crime will be found at the same location the dog is located, particularly when electronic items are stolen and the dog shares a residence with a human engaged in an electronic repair business.

(*Id.* at 6.) The Government asserts that, in the absence of probable cause, the *Leon* "good-faith exception" applies.

### B. *The warrant was supported by probable cause.*

The Fourth Amendment to the United States Constitution provides that "no [search] Warrants shall issue, but upon probable cause, supported by Oath or affirmation,

8

and particularly describing the place to be searched, and the persons or things to be seized." "Reviewing courts must give substantial deference to the original determination of probable cause made by the judge who issued the warrant, and that determination will not be set aside unless the issuing judge lacked a substantial basis for concluding that probable cause existed." *United States v. Edmiston*, 46 F.3d 786, 788 (8th Cir. 1995) (citing *Illinois v. Gates*, 462 U.S. 213, 236, 238-39 (1983)). A substantial basis only requires that the issuing judge make a practical and common-sense determination, based only on the circumstances set forth in the affidavit, that the totality of the circumstances point to "a fair probability" that evidence of a crime will be found at the location. *United States v. Kail*, 804 F.2d 441, 444 (8th Cir. 1986). "[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000) (citing *United States v. Koelling,* 992 F.2d 817, 823 (8th Cir.1993)).

I find there was sufficient information in the affidavit to establish a fair probability that evidence of Defendant's involvement in the burglary would be found in Defendant's residence. The affidavit describes the following facts: An overnight burglary of computer equipment from a small-town co-op. While the address of the co-op is not shown, Defendant's address where he engages in business as an "electronic repair and salesman" is disclosed. Surveillance footage, as reported in the affidavit, showed a boxer outside the door of the co-op. No one else was observed by surveillance footage in the area. The affiant positively identified the boxer as belonging to Defendant. The affiant vividly recalls the boxer from personal encounters during the execution of prior search warrants at Defendant's residence and other occasions. The affiant was able to compare photos from the surveillance tape with prior photos from his interactions with the dog from his own body camera. The affidavit reports, on the affiant's personal knowledge, that Defendant regularly walks the boxer near the co-op. This was corroborated by an

9

independent witness. Court records showed Dale Brewer to be living with Defendant and the affiant had seen Brewer walking the boxer on the day prior to the burglary.[4] From the foregoing, Judge Wegman could have reasonably concluded there was a fair probability that evidence of the crime would be found at Defendant's residence.

Defendant raises issues regarding the reliability of the information contained in the affidavit and the inferences drawn from it. Defendant questions Deputy Johnson's ability to positively identify the dog as his boxer from the grainy, black and white video and the still images derived therefrom.

In addition to the quality of the images, which will be discussed below, implicit in Defendant's argument is a degree of skepticism about identifying a suspect from his dog. There is not one Fourth Amendment for rural areas or small towns and another for cities. However, the fact that this search occurred in a town of 1,600 people, where the affiant had lived and patrolled for four years, certainly plays a role in the reasonableness of the inferences drawn from the facts, as well as Judge Wegman's and my assessment of the totality of the circumstances. A law enforcement officer in a metropolitan community might not be able to positively identify a dog from surveillance footage, whereas a small-town police officer, who has the opportunity to become acquainted with the people and dogs he encounters, could readily do so. Deputy Johnson had seen Defendant with his boxer at Defendant's residence and walking near the co-op. The nature of Defendant's business, the nature of the contraband sought (i.e., computer towers), the proximity of

---

[4] Defendant notes that the no contact order preventing Mr. Brewer from returning to his own residence had been lifted on September 14, 2018. His unsecured appearance bond in the court file nevertheless listed Defendant's residence as Mr. Brewer's address and required him to notify the court of any change of address and no such notification was shown. Given the absence of such notification *and* the fact Deputy Johnson had seen him walking the dog the day prior, the lifting of the no contact order does not cause any serious doubt regarding the existence of probable cause.

the residence to the co-op, and the distinctiveness of the dog all create a context that informs the reliability of the identification. The reliability of Deputy Johnson's identification of the boxer is further bolstered by his length of residence in this small community and, presumably, his knowledge of the dogs in the vicinity.

I agree with Defendant that the still images included in the warrant application are "blurry." It takes effort to look at some of the still images and discern a dog, let alone a boxer. The dog depicted is most discernably a boxer in still images at Exhibit 1, page 14. The lower picture depicts, with some lack of focus, the face and coloring of what appears to be a boxer toward the bottom of the picture.

The video itself more clearly depicts the boxer and provides context to the still images derived from it. This difference may be attributable to the difficulty in capturing a still image and reproducing it in print. Nevertheless, the dog's motion makes its features more readily identifiable and, for whatever reason, leaves a stronger impression of the dog that, in turn, provides context for the still images. For example, having watched the video repeatedly, I can make out the dog's glowing eyes, its white feet, and a boxer-like face in the image at Exhibit 1, page 12. In the image on page 13 of Exhibit 1, I can see the shape of the dog and three of its feet as the dog faces to the left. I conclude that a dog that is discernably a boxer was caught on video being walked near the scene of the burglary.

Judge Wegman was provided only the still images and not the video. However, even if a stranger (including a neutral magistrate) could not identify Defendant's particular boxer based only on the still images, taken together, the circumstances set forth in the affidavit reasonably focus suspicion on Defendant and his residence. The question is not whether the reviewing magistrate was able to identify Defendant's dog. The question was whether Judge Wegman reasonably relied upon Deputy Johnson's assertions that he identified the dog and associated it with Defendant. An affiant's knowledge of

11

facts concerning a defendant is a "practical consideration" upon which a judge may rely in determining if probable cause exists for a warrant. *See United States v. Holmes*, 594 F.2d 1167, 1170 (8th Cir. 1979) (relying on affiant's knowledge of defendant's reputation to assess quality of confidential informant's tip) (quoting *United States v. Harris*, 403 U.S. 573, 583 (1971)); *see also United States v. Johnson*, No. 16-CR-224 (MJD/LIB), 2016 WL 6661182, at \*\*7, 9 (D. Minn. Oct. 25, 2016) (recommending district court deny motion to suppress when much of affidavit for search warrant based on officer's personal knowledge), *R. & R. adopted*, 2016 WL 6662683 (D. Minn. Nov. 9, 2016). Accordingly, a judge issuing a warrant must assess the veracity of the affidavit itself. *See United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009).

In addition to the foregoing, the affidavit contained other material a neutral magistrate could rely upon. The manager of the co-op reported that the dog was a boxer. No one else was seen on the video in the relevant time frame. Defendant and his roommate had been previously seen walking a boxer in the area. Defendant lives within a few blocks of the co-op (i.e., a convenient distance to walk a dog) where he engages in sales and repair of the kind of items that were stolen. When I add to this Deputy Johnson's positive identification of the Defendant's dog based on prior encounters and what he could see in the video, I conclude probable cause existed.

The doubt Defendant attempts to cast on the identification based on the graininess of the video and Deputy Johnson's confusion about the term "brindle" does not overcome the substantial deference given to the original determination of probable cause. *See Edmiston*, 46 F.3d at 788. The nature of Defendant's business, the proximity to the scene of the crime and the distinctiveness of the dog, along with the other facts set forth in the affidavit, allowed the issuing judge to make a practical and common-sense determination there was "a fair probability" that evidence of a crime would be found at Defendant's residence. *See Kail*, 804 F.2d at 444 (8th Cir. 1986). *See also United States*

12

*v. Sawyer*, 144 F.3d 191, 193-94 (1st Cir. 1998) (finding probable cause for search warrant of suspected burglar's residence because of footprints leading between crime scene and suspect's home as well as sighting of suspect in area of the burglary around time burglary was thought to have taken place), *abrogated on other grounds by United States v. Giggey*, 551 F.3d 27 (1st Cir. 2008); *United States v. Christenson*, 549 F.2d 53, 56-57 (8th Cir. 1977) (finding probable cause for search warrant of suspected burglar's vehicle related to the burglary of a club because of suspect's status as a well-known burglar and the fact that there was a report of missing items from a nearby motel room in which suspect had stayed in on the same night); *see also United States v. Stately*, CRIM. No. 12-89, JRT/LIB, 2012 WL 3288659, at *8 (D. Minn. July 3, 2012) (finding a fair probability that evidence of a crime would be found at suspect's mother's residence because of suspect's proximity to the crime and the existence of a broken window on suspect's vehicle while broken glass was also found at crime scene), *R. & R. adopted*, 2012 WL 3288646 (D. Minn. Aug. 10, 2012).

I find Deputy Johnson's affidavit in support of the first search warrant established probable cause to believe evidence relating to the burglary of the co-op would be found upon searching Defendant's residence.

### C. *Even if the warrant was not supported by probable cause, the Leon "good-faith" exception applies.*

Because the first search warrant of October 9, 2018 (Ex. 1) was supported by probable cause, the search incident to that warrant was valid. Defendant does not separately contest the warrants for the subsequent searches, but rather argues they are the fruit of the poisonous tree.[5] In the event the district court disagrees with my conclusion

---

[5] Because there was probable cause supporting the first search warrant, or alternatively the good-faith reliance exception to the exclusionary rule should apply, I need not address probable cause separately for the remaining warrants.

regarding probable cause, I have addressed whether the *Leon* good-faith exception precludes suppression of the seized evidence.

If probable cause had been insufficient, the Court must decide whether the good-faith exception applies to avoid exclusion of the evidence. *United States v. McNeil,* 184 F.3d 770, 775 (8th Cir. 1999) (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). Defendant argues that the first search warrant was so facially lacking in probable cause that Deputy Johnson could not have relied upon it in good faith. *See United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003). Reviewing courts should not suppress evidence seized pursuant to the search warrant, even if the reviewing court determines probable cause was absent, if the officers applying for the search warrant acted in objectively reasonable reliance on the issuance of the warrant by a neutral magistrate. *United States v. Leon*, 468 U.S. 897, 922 (1984). Under this "good-faith exception," if a law enforcement officer's reliance on a warrant so issued was objectively reasonable, the evidence seized pursuant to the invalid warrant will not be suppressed. *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007).

*Proell* identified four scenarios where it is not objectively reasonable for the executing officer to rely on a warrant issued by a magistrate.[6] *Id.* at 431. The only exception relevant to this case has been asserted by Defendant: that the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See id.*

---

[6] "(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge 'wholly abandoned his judicial role' in issuing the warrant; (3) when the affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*'; and (4) when the warrant is 'so facially deficient' that no police officer could reasonably presume the warrant to be valid." *Proell*, 485 F.3d at 431 (citing *Leon,* 468 U.S. at 923).

14

For the reasons set forth above in section III.B., *supra*, I disagree that probable cause was lacking. Even so, it was not "so lacking" that Deputy Johnson's reliance on the warrant was "entirely unreasonable." *See United States v. Stankee*, No. CR14-2026, 2014 WL 3735605, at *5 (N.D. Iowa July 28, 2014) (finding that probable cause supported the search warrant, but alternatively finding that the warrant was not so lacking in probable cause that officer's reliance on issuance of the warrant by a judge was unreasonable), *R. & R. adopted*, 2014 WL 4384325 (N.D. Iowa Sept. 3, 2014). Deputy Johnson's affidavit set out many facts from which a reasonable officer could conclude that probable cause existed to search Defendant's residence. *See Raban v. Butler*, No. CIV.A. 11-5656, 2012 WL 592328, at ** 2-4 (E.D. Pa. Feb. 22, 2012) (finding that the good-faith reliance exception applied in case of suspected criminal mischief where officer's affidavit provided a circumstantial link between the vandalism and the suspect's residence, provided a motive explaining suspect's involvement, and noted previous alleged behavior on the part of the suspect that was somewhat similar to allegation of criminal mischief).

Defendant compares this case to *United States v. Herron*, 215 F.3d 812, 814 (8th Cir. 2000), which involved the government's search for marijuana cultivation on neighboring farms. *Herron* found the affidavit supported the search of Buck's farm and found it "focused, complete and quite probative." *Id*. However, the warrant barely touched on Herron's residence and then only "incidental[ly]" upon the Buck investigation. *Id*. The court described the inclusion of the Herron residence as an "afterthought." *Id*. at 815. As such, "the lack of probable cause in the affidavits would have been apparent to reasonable officers." *Id*. The issue in the case at bar is not whether Defendant's residence was an "afterthought" or otherwise deficiently tied to the alleged criminal activity. The issue is whether the evidence of the burglary presented to Judge Wegman reasonably pointed to Defendant (or his roommate) and whether it was

15

reasonable to suspect that evidence of the co-op burglary would be located at Defendant's residence. In other words, the issue is whether the affidavit supported the nexus between the contraband being sought and the place to be searched.

For the reasons set forth above, I have already concluded that the warrant established that nexus. Nevertheless, I will assume *arguendo* that probable cause is absent and analyze whether the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975)). "The court must look at the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite a judge's issuance of the warrant." *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015) (citation omitted). *Leon* explained that "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." 468 U.S. at 922 (quotations omitted). Nevertheless, "in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id.* at 922-23 (footnote omitted).

The good-faith exception routinely applies unless there are extreme circumstances which prevent its application. In *Herron*, for example, the good-faith exception did not apply because although there was no technical legal deficiency in the affidavits, there was "simply no evidence" in the affidavits linking the suspect to criminal activity. 215 F.3d at 814.

*United States v. Johnson*, 332 F. Supp. 2d 35, 39 (D. D.C. 2004) is a good example of the basis for finding when the good-faith exception does not apply. *Johnson* held the good-faith exception inapplicable where (1) the affiant failed to describe when information was obtained; (2) the affiant failed to corroborate a sponsoring witness's

16

account of events; (3) the affiant failed to obtain a statement from any witness as to suspect's residence; (4) the information giving rise to the search was stale; and (5) nexus to the location to be searched was never established. Deputy Johnson's affidavit fails in none of these particulars.

*United States v. Hove*, 848 F.2d 137, 139–40 (9th Cir. 1988) found the good-faith exception inapplicable where "the affidavit offer[ed] no hint as to why the police wanted to search th[e] residence[,] . . . d[id] not link th[e] location to the Defendant and . . . d[id] not offer an explanation of why the police believed they may find incriminating evidence there; the affidavit simply list[ed] the [suspect's] address as a location to be searched." Once again, Deputy Johnson's affidavit cannot be criticized on any of these bases.

*United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005) found the good-faith exception could not apply because the affidavit "completely failed to explain why [the officer] believed the items sought would be found at [suspect's residence]." Again, Deputy Johnson's affidavit is sufficient in this regard.

Simply put, this is not an extreme scenario in which the good-faith exception is inapplicable. Defendant's attack on Deputy Johnson's reliance on the warrant is essentially an attack on the inferences to be drawn from the facts stated in the affidavit, especially the connection of the boxer to the burglary, then to Defendant and his residence. As already noted, there are a number of facts set forth in the affidavit tending to link Defendant to the burglary. *See Carpenter*, 341 F.3d at 670 (noting that a good-faith determination also looks to the totality of the circumstances). It was not objectively unreasonable for Deputy Johnson to believe that the facts such as the dog's presence on the video, his personal knowledge of Defendant and his dog, the dog's presence in the area with Defendant (or his roommate), the nature of items stolen, the nature of Defendant's business, the proximity of Defendant's residence, and the absence of other

17

suspects during the overnight hours was adequate to support the inference about the probability of locating stolen property at Defendant's residence. *Id.* It is logical to infer that an individual (in this case identified by reasonably unique features such as his dog) who lived nearby, who was engaged in a business related to the items stolen, and who had a motive and opportunity to commit the crime was likely to have evidence of that very recent crime at his residence. It was therefore not unreasonable for Deputy Johnson to rely on a neutral magistrate's conclusion that the affidavit established probable cause to execute the search of Defendant's residence.

Based on the foregoing, I find that exclusion of the evidence would be inappropriate, even if a reviewing court concluded the first search warrant lacked probable cause, because it was objectively reasonable for the deputy to rely upon the neutral magistrate's conclusion that probable cause existed to search Defendant's residence.

### IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the Court (1) find the affidavit in support of the first search warrant established probable cause for the searches pursuant to the first, second, and third search warrants; (2) alternatively find that the *Leon* good-faith reliance exception to the exclusionary rule applies, and **deny** Defendant's Motion to Suppress Evidence (Doc. 12).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal

from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 9th day of April, 2019.

_____
Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa